# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10-CV-00089-JHM

BP PRODUCTS NORTH AMERICA INC.                                PLAINTIFF

V.

McGUIRK OIL COMPANY, INC., et al.                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff BP Products North America Inc.'s Motion to Amend the Judgment against McGuirk Oil [DN 29] and cross motions for summary judgment by Plaintiff BP [DN 31] and Defendants Michael McGuirk and Gordon Haynes, III [DN 33]. Fully briefed, these matters are ripe for decision.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine

factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

McGuirk Oil Company, Inc. ("McGuirk Oil") operated several gas stations in the south central Kentucky area. On September 18, 2000, McGuirk Oil entered into a Branded Jobber contract with BP Products North America Inc. ("BP"), whereby McGuirk Oil agreed to exclusively use BP petroleum. The 2000 Branded Jobber contract was essentially a franchise contract for a term of three (3) years. Among the many provisions in the contract was a requirement that the principals of McGuirk Oil execute a personal guaranty of McGuirk Oil's debt before any line of credit would be extended by BP to McGuirk Oil. On October 17, 2000, nearly a month after signing the first Branded Jobber contract, Michael McGuirk, one of the two principals of McGuirk Oil, executed a personal guaranty of McGuirk Oil's debt to BP.

The guaranty, titled Unlimited Guaranty, states in pertinent part that

> For Value Received and to Induce . . . BP Exploration & Oil, Inc. . . . to lend money or otherwise extend financial accommodation to or for the account of McGuirk Oil . . . [Michael McGuirk] Unconditionally Guarantee(s) Payment When Due, whether by declaration or otherwise, of any and all Indebtedness, including interest thereon, of Debtor to Company, however such indebtedness may arise, whether as principal, guarantor, endorser or otherwise, now or hereafter existing . . . and agree(s) to pay all expenses (including attorneys' fees and legal expenses) incurred by [BP] to collect Debt and in enforcing this guaranty.
> . . . .
> Company may, from time to time, either before or after receipt of a notice of discontinuance of this guaranty, without notice to or consent of any of the Undersigned, and without in any way affecting any on [sic] the Undersigned's

2

> liability or [BP's] rights hereunder: alter, accelerate, extend, renew, or change the time, place, manner or terms of payment of, or grant indulgences with respect to, Debt: Increase or decrease the amount of debt or the rate of interest on Debt[.]
>
> . . . .
>
> This Guaranty Shall Be Continuing Guaranty, provided that it may be discontinued as to any of the Undersigned only by his/her giving written notice by certified mail to [BP.]

Defs.' Mot. Summ. J. Attach. 4. On August 20, 2002, Gordon Haynes, III, the other McGuirk Oil principal, also executed a personal guaranty of McGuirk Oil's debt. The terms of this guaranty were identical to those in the guaranty signed by Michael McGuirk in 2000.

BP and McGuirk Oil entered into a Jobber Re-Image Program ("JRP") contract on July 17, 2003, that called for McGuirk Oil to update and re-image many of the gas stations that it operated. On August 8, 2003, as the first Branded Jobber contract was set to expire, McGuirk Oil and BP entered into a second Branded Jobber contract for another term of three (3) years. Nearly three weeks later, both Michael McGuirk and Gordon Haynes executed another unlimited personal guaranty of McGuirk Oil's debt to BP. This guaranty was identical in all material respects to the earlier two guarantees executed by Defendants.

On December 28, 2005, BP and McGuirk Oil entered into an Electronic Point of Sale (EPOS) contract that called for McGuirk Oil to install and utilize a Commlinx system for processing transactions at each gas station that it operated. The following summer, on August, 30, 2006, BP and McGuirk oil entered into a third Branded Jobber contract for an additional term of three (3) years. This contract does not appear to differ in any material respect from the earlier Branded Jobber contracts executed by the parties. The 2006 contract contains an attachment setting a minimum volume requirement of 5 million gallons of branded gasoline product per year that

McGuirk Oil was required to purchase for the following three years.[1] This attachment states that it "is executed simultaneously with and hereby made a part of the current branded jobber contract [] dated August 30, 2006." The attachment further states that "[BP] and [McGuirk Oil] ratify and affirm the terms and conditions of the [Branded Jobber] Contract and acknowledge that this Attachment . . . is incorporated within said Contract." Following the execution of the 2006 Branded Jobber contract, Michael McGuirk executed another unlimited personal guaranty of McGuirk Oil's debt on September 26, 2006.

In 2008, McGuirk Oil began to experience cash flow problems. On April 28, 2008, BP sent a letter to McGuirk Oil addressed to Michael McGuirk which stated that

> BP has learned that you have not purchased BP-branded motor fuel since February 27, 2008 and yet your BP-branded retail sites are continuing to operate. Clearly, you are selling fuel that you have not purchased from BP; and there is an indication that the product you are selling is not BP-branded product. Commingling of motor fuels is a direct violation of your Franchise and is grounds for termination and nonrenewal of your Franchise.
> . . . .
> Accordingly, BP does hereby terminate and nonrenew your Franchise[.]

Compl. Attach. 4.

BP filed suit against McGuirk Oil alleging that McGuirk Oil breached the 2006 Branded Jobber contract, the 2003 JRP contract, and the 2005 EPOS contract. BP also filed suit against Michael McGuirk and Gordon Haynes for their personal guaranties of McGuirk Oil's debt. BP moved for a default judgment against all three Defendants on November 12, 2010. Defendants responded conceding that judgment should be entered against Defendant McGuirk Oil but that Defendants McGuirk and Haynes had valid defenses as to the guaranties, which should be addressed

---

[1] It is likely that the 2000 and 2003 Branded Jobber contracts also contained such attachments, but they were not submitted with those contracts as exhibits by either party.

through cross motions for summary judgment. BP withdrew its motion as to the individual Defendants and the Court entered judgment against Defendant McGuirk Oil on January 3, 2011. The parties have now fully briefed the issue of the validity of the personal guaranties and have filed their cross motions for summary judgment. Plaintiff BP has also filed a motion to amend the judgment against Defendant McGuirk Oil.

## III. DISCUSSION

Plaintiff BP has filed a motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to amend the judgment against Defendant McGuirk Oil to include the accrued interest on the debt owed to BP by McGuirk Oil as well as the attorneys' fees expended to collect that debt. Plaintiff BP has submitted the Affidavit of Robert Ross, a senior credit analyst for BP, which states that the Branded Jobber contract executed between Plaintiff BP and Defendant McGuirk Oil allows BP to charge 8% interest on amounts owed to BP by McGuirk Oil. The calculation of interest on the amounts owed to Plaintiff BP is $263,884.06 as of January 31, 2011. Plaintiff BP has also submitted the Affidavit of Michelle M. Drake, an attorney in the law firm of Greensfelder, Hemker & Gale, P.C., which states that Plaintiff BP has incurred $34,000 in attorneys' fees in an attempt to collect the debt owed by Defendant McGuirk Oil. Defendants have not responded to the motion. The Court finds that the motion to amend should be granted and that the judgment should be in the amount of $1,433,297.13 as of January 31, 2011, with interest continuing to accrue at an annualized rate of 8% until the judgment is satisfied.

Plaintiff BP and Defendants McGuirk and Haynes have also filed cross motions for summary judgment. The central issue in the cross motions is whether the personal guaranties signed by

5

Defendant McGuirk and Defendant Haynes are valid under K.R.S. § 371.065(1).[2] In order for a guarantee to be enforceable under K.R.S. § 371.065, it must: (1) be written on the instrument being guaranteed; or (2) expressly refer to the instrument being guaranteed; or (3) be signed by the guarantor and contain provisions specifying the amount of the maximum aggregate liability and the date on which the guaranty terminates. Wheeler & Clevenger Oil Co. v. Washburn, 127 S.W.3d 609 (Ky. 2004).

Plaintiff BP contends that the personal guaranties of Defendants McGuirk and Haynes are enforceable under the third requirement of K.R.S. § 371.065 because they contain an implicit limit on liability and an implicit termination date. BP argues that the guaranties could be terminated at any time by the guarantors Defendants McGuirk and Haynes, which would cut off any future liability. Such a power, BP contends, allows the Defendants to place whatever termination date and liability limit they choose on the guaranties.

When conducting statutory interpretation, the Court is governed by the "plain meaning" rule. Wheeler, 127 S.W.3d at 614. In order for a guaranty to be enforceable under the third requirement, the plain meaning of the statute requires provisions specifying the amount of the maximum aggregate liability and the date on which the guaranty terminates. The guaranties at issue do not have such provisions. An unlimited guaranty that continues in perpetuity until the guarantor notifies the guarantee is not one that contains a provision specifying the date on with the guaranty terminates. Plaintiff BP's reliance on In re Sim/Lake Cumberland, Inc., 1993 Bankr. LEXIS 2320,

---

[2] K.R.S. § 371.065(1) states that "No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates."

at *13 (E.D. Ky. 1993), for support of such a proposition is misplaced.

In Sim, the court found that the guaranty contained a provision that the guarantor would be "liable for the debts of SIM . . . 'now existing or hereafter incurred on or before 12/1/94.'" Id. at *12. The court reasoned that the guaranty was "not an open-ended guaranty that may last into eternity." Id. at *13. Rather, "[t]he writing appears to express the intent of the parties that the guarantor's obligation will be concluded upon the payment of any and all debts incurred by Sim on or before December 1, 1994." Id. The guaranty at issue in the present case is distinguishable from the guaranty in Sim. The guaranty in the instant case is clearly a continuing guaranty with no end in sight. This interpretation is reinforced by the language used in the BP guaranty that it was an "unlimited guaranty" that "shall be continuing." Defs.'Mot. Summ. J. Attach. 4. Furthermore, under the guaranty, BP holds the power to "increase or decrease the amount of Debt or the rate of interest on Debt" either "before or after receipt of a notice of discontinuance" by the guarantor. Id. Such a provision makes the maximum liability of the guarantor unknown, even after he has exercised his right to discontinue the guaranty. Taken together with the other language from the guaranty, the Court finds that the provision allowing Defendants to discontinue the guaranty is not one that specifies the maximum amount of liability or the specific date of termination. Therefore, the guaranty is not enforceable under the third requirement of K.R.S. § 371.065. See John Deere Landscapes v. Gagel, 2006 WL 1953900, at *4 n.9 (Ky. Ct. App. July 14, 2006) (stating that a guaranty that required guarantor to provide written notice if he desired to terminate his obligation under the guaranty "would not be valid under Kentucky law because it does not contain a maximum aggregate liability of the guarantor or a date on which the guaranty terminates.").

Plaintiff BP also argues that the guaranties are enforceable because they were "written on"

7

the instruments being guaranteed. BP attempts to combine the "written on" requirement with the reference requirement to validate the guaranties. BP argues that the guaranties were referenced in the Branded Jobber contracts and were attachments to those contracts so they should be considered to have been "written on" the Branded Jobber contract. BP further argues that the guaranties cover the obligations undertaken by the JRP and EPOS contracts because the obligations to enter into those contracts are also referenced in the Branded Jobber contract. In support of this proposition, Plaintiff BP cites <u>Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous.</u>, 663 F. Supp. 2d 575 (E.D. Ky. 2009). In <u>Alliant</u>, the guaranty was an exhibit included within a 158-page limited partnership agreement, but there was evidence that it was presented as a separate document. <u>Id.</u> at 582. The court found it unnecessary to determine if an exhibit to a contract satisfied the "written on" requirement under the statute, because it found that the guaranty referenced the instrument being guaranteed and was, therefore, enforceable. Nevertheless, the <u>Alliant</u> court noted that "[i]nclusion of the guaranty as an exhibit within the Agreement . . . comports with the underlying purpose of the statute of 'reducing' the consumer risk of 'a guarantor agreeing to guarantee an unknown obligation.'" <u>Id.</u> (quoting <u>Wheeler</u>, 127 S.W.3d at 615).

<u>Alliant</u> does not stand for the proposition that exhibits to an agreement are considered to be "written on" the agreement and the Court need not decide that question now because it does not appear that the guaranties were actually exhibits or attachments to any of the executed contracts. The interpretation and construction of a contract is a question of law for the court to decide. <u>Equitania Ins. Co. v. Slone & Garrett, P.S.C.</u>, 191 S.W.3d 552, 556 (Ky. 2006). In determining if the guaranties were actually attachments to the Branded Jobber contracts, the Court looks to the 2006 Branded Jobber contract, which offers a prime example of an attachment. Appended to the

8

end of that contract were four pages that were listed as Attachment A to Branded Jobber Contract. The attachment clearly states that it "is executed simultaneously with and hereby made a part of the current branded jobber contract . . . dated August 30, 2006." Defs.'Mot. Summ. J. Attach. 2. The attachment further states that "[BP] and [McGuirk Oil] ratify and affirm the terms and conditions of the [Branded Jobber] Contract and acknowledge that this Attachment . . . is incorporated within said Contract." Id. The attachment bears a signature date of August 30, 2006, which is the same date that the 2006 Branded Jobber contract was signed. This evidence clearly indicates that the document labeled Attachment A was intended to be an attachment and considered part of the 2006 Branded Jobber contract itself.

The various guaranties on the other hand contain no such indication either through language or similarity of dates. The language of the guaranties does not indicate that it is to be made a part of any existing contract but instead appears to have been written generally so as to enable it to apply to "any and all indebtedness . . . howsoever such indebtedness may arise." Defs.'Mot. Summ. J. Attach. 4. Furthermore, unlike the attachment to the 2006 Branded Jobber contract, the guaranties were never signed on the same day as the Branded Jobber contracts. In fact, the earliest that a guaranty was executed after the execution of a contract was nineteen (19) days. See August 8, 2003, Branded Jobber contract and August, 27, 2003, Unlimited Guaranty. Defendant Haynes' 2002 guaranty was executed almost two years after the 2000 Branded Jobber contract. This is in sharp contrast to Attachment A which was signed the same day as the 2006 Branded Jobber contract. The difference in language between the guaranties and Attachment A to the 2006 Branded Jobber contract as well as the difference in signing dates between the various personal guaranties and the Branded Jobber contracts demonstrates that the guaranties were not attachments or exhibits that

were attached or included in the Branded Jobber contracts. Therefore, the Court finds that the guaranties were not "written on" the instruments that they were guaranteeing and are not enforceable.

Plaintiff BP has argued, in the alternative, that even if the guaranties are not enforceable that the provision entitling it to attorneys' fees found in the guaranties should be enforceable. Plaintiff BP contends that the provision in the guaranties that states that the undersigned "agree(s) to pay all expenses (including attorneys' fees and legal expenses) incurred by [BP] to collect Debt and in enforcing this guaranty" is actually an indemnity agreement. Defs.'Mot. Summ. J. Attach. 4. Plaintiff BP argues that the promise to pay attorneys' fees "is an obligation that is separate from the guaranty of the principal debt owed." Pl.'s Mem. Support of Mot. Summ. J. 13. The Kentucky courts have made it very clear that indemnity agreements do not fall under the ambit of K.R.S. § 371.065. Intercargo v. Farrell, 89 S.W.3d 422, 426 (Ky. Ct. App. 2002).

The court in Intercargo described the difference between a guaranty and an indemnity agreement as follows:

> the promisor in any indemnity contract undertakes to protect his promise (sic) against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee.

Intercargo, 89 S.W.3d at 426. In the instant case, the provision that Plaintiff BP cites is the final sentence of the first paragraph of the guaranty. It is uncontested that the agreement itself is a guaranty, evidenced by its title Unlimited Guaranty. Plaintiff BP's attempt to portray a single clause in the guaranty as an indemnity provision is unpersuasive. The Court finds that the provision to which Plaintiff cites is actually part of the guaranty and not an individual indemnity provision.

The provision under which Plaintiff seeks to recover attorneys' fees is only applicable in the

10

instant case because of the failure of McGuirk Oil to carry out its obligations. Without McGuire Oil's default on its debt, the guaranties would not have been invoked. As such, this situation mirrors the Intercargo court's description of a guaranty and not an indemnity agreement. The undertaking of the guarantors, Defendants McGuirk and Haynes, to pay all expenses, including attorney's fees, incurred by Plaintiff BP to collect debt and in enforcing the guaranty is a provision designed to protect Plaintiff BP against loss or damage in the event of a failure of Defendant McGuirk Oil to carry out its obligations to Plaintiff BP. But for the failure of Defendant McGuirk Oil to pay its debt to Plaintiff BP, Plaintiff BP would not have invoked the guaranty agreement and sought attorneys' fees.

The loss of attorneys' fees that Plaintiff BP is seeking to recover is a result of the broken promise of Defendant McGuirk Oil and not through the independent promise of Defendants McGuirk and Haynes to protect Plaintiff BP from incurring liability. As such, the Court finds that the provision is merely part of the guaranty and not an independent indemnity provision. This interpretation is supported by K.R.S. § 371.065(2) which states that "a guaranty may . . . guarantee payment of . . . fees . . . including reasonable attorneys' fees[.]" This indicates that the legislature intended provisions covering the cost of attorneys' fees in guaranties to be considered part of the guaranty itself. Therefore, the Court finds that the provision regarding the payment of attorneys' fees is part of the guaranty and fails for the same reasons discussed above regarding the failure of the entire guaranty.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff BP Products North America Inc.'s Motion to Amend the Judgment Against Defendant McGuirk Oil Company,

Inc. [DN 29] is **GRANTED** to reflect a total judgment of $1,433,297.13 as of January 31, 2011, with interest continuing to accrue at an annualized rate of 8%.

**IT IS FURTHER ORDERED** that Defendants Gordon Haynes, III, and Michael McGuirk's Motion for Summary Judgment [DN 33] is **GRANTED** and Plaintiff BP Products North America Inc.'s Motion for Summary Judgment [DN 31] is **DENIED**.

cc: counsel of record